## Commonwealth, for use, etc. v. Lewis, Master Commissioner, et al.

(Decided October 29, 1918.)

### Appeal from Laurel Circuit Court.

1. Officers—Bonds—Liability for Taking Insufficient Surety on.— Sections 683 and 684 of the Civil Code prescribe the qualifications of sureties in bonds taken by public officers, and when an officer fails to take the required affidavit as to the solvency of the surety and the surety turns out to be insolvent, the officer will be liable on his bond unless it be clearly shown that the surety had the property prescribed in section 684.

2. Officers—Bonds—Surety on—Averments of Petition.—In a suit on an officer's bond to recover damages for his failure to take sufficient surety, a petition charging only that the sureties were insolvent when accepted by the officer creates a presumption that the officer did not do his duty and is good on demurrer.

3. Officers—Bonds—Burden of Proof in Action On.—In a suit on an officer's bond to recover damages caused by his failure to take sufficient surety in a bond, when the petition alleges that the sureties were insolvent at the time they were accepted the burden is on the officer to show that he took the affidavit required by the Code or that the sureties at the time they were accepted had property in the amount and of the value prescribed in section 684 of the Code.

4. Officers—Bonds—Liability of Officer for Taking Insufficient Surety.—Although an officer may require the surety to make the affidavit required by section 683 of the Code, he will yet be liable if they were insolvent, if he knew the affidavit made by them was false or that they were in fact insolvent.

5. Officers—Bonds—Master Commissioner—Liability of For Taking Insufficient Surety in Sale Bonds.—Where a master commissioner accepts on a sale bond insolvent surety and it is necessary on this account that there should be a re-sale of the property, and at the re-sale, it brings less than it did at the first sale, the master commissioner will be liable on his bond for any loss sustained by creditors or others on account of his failure to take a sufficient bond at the first sale.

STEPHENS & STEELEY for appellant.

H. C. CLAY for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This suit was brought in the name of the Commonwealth for the use and benefit of the Whitley National Bank of Corbin v. J. K. Lewis, master commissioner of the Laurel circuit court and the sureties on his bond as commissioner, to recover $826.00.

It appears from the petition to which a general demurrer was sustained that Lewis, as master commissioner of the Laurel circuit court, sold under a decree of the court certain land which was purchased at the decretal sale by W. R. Ramsey, who executed sale bonds in accordance with the judgment, with J. S. Brown, W. L. Bruner and S. E. Randell as sureties. The report of sale was filed and confirmed but when the bonds fell due they were not paid and thereupon executions were issued against the obligors in the bonds which in due time were returned "no property found." Afterwards rules were issued against the purchaser, Ramsey, and his sureties to show cause why they did not pay the bonds and to this rule his sureties responded that neither of them had any property out of which to pay the same and did not have at the time they were accepted as sureties in the bonds by the commissioner.

When this was made to appear the court ordered a re-sale of the property and thereafter it was sold for $826.00 less than it brought at the first sale. Thereafter this suit was brought by a judgment creditor, who alleged that on account of the insolvency of the principal

and sureties in the first bonds and the re-sale of the property it suffered a loss in the amount of the difference between what the property brought at the first sale and what it brought at the second sale. The petition further averred the appointment of Lewis as master commissioner and the execution of his bond in due form as such commissioner, and in apt terms the breach of the bond which consisted as averred in the fact that the principal in the bond, W. R. Ramsey, was at the time of the execution of the bond as well as before and since a non-resident of the state and that he and the sureties in the sale bonds were at the time they were accepted as such sureties, each insolvent. It was further averred that "the defendant, J. K. Lewis, as master commissioner, broke the covenant in his bond in that he failed to take good and solvent sureties upon the said bonds heretofore set out and thereby caused this plaintiff to loose $826.00, and thereby he and his sureties on the master commissioner's bond became and are liable to this plaintiff for all loss sustained by it in the failure of said commissioner to collect and pay over said money to the party entitled thereto, and this plaintiff alone sustained all the loss by the wrongful conduct of the defendant as master commissioner in failing to take solvent bonds and to collect same and properly discharge his duties as provided by law."

It will be observed that there is no specific charge in the petition that the master commissioner acted negligently or fraudulently in accepting the sureties in the sale bonds or that he failed to make any inquiry into the solvency of the sureties in the sale bonds, the only allegation being that W. R. Ramsey, the principal in the bonds, was at the time of their execution a non-resident of the state and "that at the time the defendant, J. K. Lewis, as master commissioner, accepted said sale bonds the principal, W. R. Ramsey, and each of the sureties thereon, to-wit, Brown, Bruner and Randell, were each insolvent," and that he broke the conditions of his bond in failing to take good and solvent sureties, whereby the judgment creditor sustained the loss for which the suit was brought to recover.

It is provided in part in section 392 of Kentucky Statutes that the circuit court shall appoint a master commissioner, who, "before acting, the master commis-

sioner shall be sworn and execute a bond, with surety, to be approved by the court, for the faithful performance of the duties of his office. The bond shall be entered of record in said court, and shall be renewed once in each year, and oftener if required by the court, and a copy thereof, certified by the clerk, shall be evidence in all proceedings in this state." And in section 393, that "a recovery may be had upon such bond by any person, in the name of the Commonwealth, for his use, against the obligors in it, for all damages, property or money to which he is entitled from the principal; and as many actions on the bond as may be necessary for that purpose may, from time to time, be brought."

Judicial sales of property are regulated by the Civil Code of Practice, and it is provided in section 683 that "an officer whose duty it is to take a surety in any bond provided for by this Code may require the person offered as surety to make affidavit of his qualifications, which affidavit may be made before such officer. The taking of such an affidavit shall not exempt the officer from any liability to which he might otherwise be subject for taking sufficient security." And in 684, that "the surety in every bond provided for by this Code must be a resident of this state, and be worth double the sum to be secured beyond the amount of the debts, and have property liable to execution in this state equal to the sum to be secured. If there be two or more sureties in the same bond they must, in the aggregate, have the qualifications prescribed in this section."

Under this statement of the facts and law the question for decision is—Must the petition in a suit such as this, in order to be good, charge that the commissioner negligently or fraudulently failed to take a good bond or failed to use reasonable care and diligence to ascertain the solvency of the surety? And this in turn brings up the question—Is the burden on the plaintiff in a suit like this to allege and prove that the master commissioner, through negligence or fraud, accepted insolvent sureties or failed to exercise reasonable care and diligence to see that the sureties were solvent, or is it sufficient for the plaintiff to only allege that the master commissioner accepted insolvent sureties as was charged in the petition in this case? Or to put it in other words, if the plaintiff alleges that the master commissioner ac-

cepted insolvent sureties, is this sufficient to put on the defendant commissioner the burden of showing that he exercised the required care to ascertain the solvency of the sureties? If the burden is on the plaintiff to allege and prove that the commissioner negligently or fraudulently accepted insolvent sureties or failed to exercise reasonable care to ascertain the solvency of the sureties, the petition in this case was bad and the general demurrer was properly sustained, but if the naked allegation in the petition that the commissioner accepted insolvent surety was sufficient to put on the commissioner the duty of showing that he exercised the required care to ascertain the solvency of the surety before accepting them, the petition was good and the demurrer should have been overruled.

In the case of Edward-Barnard Company v. Pflanz, 115 Ky. 393, which was a suit upon the bond of a sheriff for failing to take sufficient sureties in an attachment bond, the court said, in the course of the opinion, "We have no statute in this state fixing the liability of the sheriff, or defining the degree of care required of him in the matter of taking bonds." And further said, quoting from Mechem on Public Officers: "It is the officer's duty, not only to obtain the bond, bail, or other security, but to use reasonable care and diligence to see that none but competent and reasonable securities are accepted, and that the securities themselves are in proper and sufficient form. He is not the insurer of the solvency of the sureties, unless the statute makes him so; nor is he liable, though deceived, where he exercises reasonable care. But if he discharges the goods or debtor without any bond at all, or one in which the sureties' names are forged, or if he accepts insufficient sureties, without making a reasonable effort to ascertain their solvency, he is liable."

In this opinion the court, in making the statement that there was no statute defining the degree of care required of an officer in taking bond apparently overlooked sections 683 and 684 of the Civil Code, heretofore cited. Under these sections we think it is the duty of an officer in accepting a bond to require the person offered as surety to make affidavit of his qualification, and if he fails to require this affidavit he assumes the responsibility for the solvency of the sureties although he may

have exercised reasonable care to inquire into their solvency, unless it be clearly shown that the sureties had the property prescribed by section 684. The best test of the solvency of the surety is the affidavit required by the Code, and when the officer requires the surety to make this affidavit and the affidavit shows the surety to have the property required by section 684, the officer may, with safety, accept him in the bond without further inquiry into his solvency, although of course if the officer knew that the surety was insolvent or that the affidavit was false in some substantial particular the taking of the affidavit would not relieve the officer from liability.

These Code provisions furnish an easy and simple method by which the officer may test the solvency of the surety, and we think it was contemplated by them that if the surety was in fact insolvent when accepted and the officer failed to require the affidavit he assumed responsibility for any damages that might accrue on account of the insolvency of the surety.

Having this view of the matter we think the petition was good on demurrer and that the burden was on the commissioner to show by answer and evidence either that he took the affidavit required by the Code or that the sureties had at the time they were taken on the bond the amount and value of property specified in section 684. If, however, the sureties had at the time they were accepted, property in the amount and of the value prescribed in section 684 it would be a sufficient defense, although the affidavit was not taken, provided this fact was clearly shown. In short, we think the allegation that the sureties were insolvent when accepted created a presumption that the officer did not do his duty and hence put on the officer the burden of proving that he did.

It follows from this that if the commissioner fails to exact the required affidavit and it appears that the surety accepted by him did not have property in the amount and value prescribed by section 684 and that the complaining party sustained loss on account of the insolvency of the surety, the officer committed a breach of the conditions of his bond and became liable to the complaining party for the loss sustained.

Wherefore the judgment is reversed with directions to overrule the demurrer and for proceedings in conformity with this opinion.